## SECURITIES AND EXCHANGE COMMISSION v. MINAS DE ARTEMISA, S. A.

### No. 10907.

Circuit Court of Appeals, Ninth Circuit.

June 26, 1945.

As Amended July 9, 1945.

---

[1] Reid v. Fargo, 241 U.S. 544, 36 S.Ct. 712, 60 L.Ed. 1156; The John Twohy, 255 U.S. 77, 41 S.Ct. 251, 65 L.Ed. 511.

[2] D.C., 56 F.Supp. 859.

Roger S. Foster, Solicitor, Securities. and Exchange Commission, Milton V. Freeman, Asst. Solicitor, Louis Loss and Herman D. Levinson, Attorneys, SEC., all: of Philadelphia, Pa., for appellant. ·

No appearances were entered on behalf of appellee.

Before DENMAN, HEALY, and BONE,. Circuit Judges.

HEALY, Circuit Judge.

The primary question presented in this. case is whether, on application of the Securities and Exchange Commission, the court in Arizona may order a corporation subject to its jurisdiction to produce books, and records located in Mexico.

In 1931 one Kendall owned all but the qualifying shares of Sonora Copper Mining Company, a Colorado corporation, which held a group of mining claims in Sonora, Mexico. At that time Kendall organized Artemisa Mines, Inc., under the laws of Arizona, and took a majority of its authorized shares in exchange for the stock. of the Colorado corporation. In 1936 Kendall caused the organization of Minas de Artemisa, S. A., a Mexican corporation, appellee in this case. Appellee issued its. stock to Sonora Copper Mining Company in exchange for the mining claims. The latter corporation then transferred the stock of the Mexican corporation to Artemisa Mines,. Inc., as a liquidating dividend. Thus the mining claims are now owned by the Mexican corporation, all the stock of which is owned by the Arizona corporation, and the latter corporation in turn is controlled:.

by Kendall. Kendall, an American citizen, is president both of appellee and of the Arizona corporation. From his homes in Bisbee and Tucson, Arizona, he has conducted all of appellee's corporate business and activities except the actual operation of its mine. There is evidence that some of appellee's books and documents have been kept in the office of its attorney in Nogales, Arizona.

The Securities and Exchange Commission directed an investigation to determine whether these corporations and Kendall had violated the provisions of the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., in the sales of stock of the two corporations to persons in the United States. Subpenas issued to both the Arizona and Mexican companies were personally served on Kendall at his residence in Arizona. That directed to appellee Minas de Artemisa, S. A., required the production of certain stock certificates, books and records, advertising literature, etc., all relating to the sale of securities by appellee. Kendall appeared before the officer of the Commission on the date set but produced none of the material called for. The Commission, under authority of § 22(b) of the Act,[1] filed application for an order enforcing the subpena and caused notice thereof to be served upon both corporations through personal service on Kendall in Arizona. Appellee moved for a dismissal for lack of jurisdiction and on the ground that the documents sought to be produced were in Mexico and were by the law of that country required to be kept at its place of business there. The court dismissed the application and the Commission appeals.

▆▆ Clearly appellee was "found" in the district of Arizona within the meaning of § 22(b), supra.[2] The Restatement of Conflict of Laws (§ 94) summarizes the applicable general rule thus: "A state can exercise jurisdiction through its courts to make a decree directing a party subject to the jurisdiction of the court to do an act in another state, provided such act is not contrary to the law of the state in which it is to be performed."[3] The proposition thus stated has ample support in the authorities. Courts have frequently required persons within their jurisdiction to produce books and papers which were beyond the territorial limits of the court, even in cases where the documents were located in a foreign country. Cf. Consolidated Rendering Co. v. Vermont, 207 U.S. 541, 28 S.Ct. 178, 52 L.Ed. 327, 12 Ann.Cas. 658; Independent Order of Foresters v. Scott, 223 Iowa 105, 272 N.W. 68; Copper King of Arizona v. Robert, 76 N.J.Eq. 251, 74 A. 292; Holly Mfg. Co. v. Venner, 86 Hun 42, 33 N.Y.S. 287. In requiring the performance of acts in other jurisdictions the courts have gone much further than merely to direct the production or to permit the inspection of documents. In the Salton Sea Cases, 9 Cir., 172 F. 792, this court held that a court of equity may enjoin a continuing injury to real property within its jurisdiction as the result of flooding caused by works improperly maintained by the defendant in Mexico, notwithstanding compliance with the decree would require the performance of acts in Mexico. To similar effect see Vineyard Land & Water Co. v. Twin Falls, etc., Land & Water Co., 9 Cir., 245 F. 9. Consult also Madden v. Rosseter, 114 Misc. 416, 187 N.Y.S. 462; Hobbs v. Tom Reed Gold Mining Co., 164 Cal. 497, 129 P. 781, 43 L.R.A.,N.S., 1112.

▆▆ Assuming the absence of conflict with Mexican law, the Commission is thus entitled to an order enforcing its subpena unless the general rule mentioned has been restricted by Congress in the Securities Act itself. The court below appears to have thought that § 19(b) of the Act contains such a restriction. The section provides that in the conduct of its investigations the Commission may require the attendance of witnesses and the pro-

---

[1] "In case of contumacy or refusal to obey a subpoena issued to any person, any of the said United States courts, within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides, upon application by the Commission may issue to such person an order requiring such person to appear before the Commission, or one of its examiners designated by it, there to produce documentary evidence if so ordered, or there to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by said court as a contempt thereof." 15 U.S.C.A. § 77 v(b).

[2] Washington-Virginia Railway Co. v. Real Estate Trust Co., 238 U.S. 185, 35 S.Ct. 818, 59 L.Ed. 1262.

[3] As defined in § 2 of the Restatement the term "state" broadly includes foreign countries.

duction of documentary evidence "from any place in the United States or any Territory at any designated place of hearing."[4]

The provision is ambiguously worded but we think it was not intended to circumscribe the Commission's inquisitorial powers. It appears to be designed to override territorial restrictions which would obtain had Congress prescribed for the Commission the limitations contained in 28 U.S.C.A. § 654, relating to court subpenas. The latter statute, in general, limits the effective service area of a subpena to (1) the judicial district, or (2) without the district but within a distance of 100 miles of the place where the subpena is returnable. Of course, even under a statute so limited the court would possess power to enforce the Commission's subpena in this instance. We are satisfied that § 19(b) was intended broadly to empower the Commission to require the attendance of witnesses or the production of documentary evidence at any designated place of hearing, provided only that service of the subpena is made within the territorial limits of the United States. The obligation to respond applies even though the person served may find it necessary to go to some other place within or without the United States in order to obtain the documents required to be produced. Congress having clothed the Commission with broad investigatory powers, we should be slow to impute to it the purpose of creating a loophole for companies incorporated abroad but which, like appellee, are actively doing business and peddling their securities in the United States.

On the hearing below a Mexican judge testified for appellee that the Mexican law requires all corporate books and records to be kept at the corporation's place of business and that they may not lawfully be taken into a foreign country.[5] On behalf of the Commission a reputable member of the bar of Mexico City testified that no Mexican legislation expressly prohibits a corporation from complying with an order of an American court requiring it to produce its books and records, and that there is no prohibition of the furnishing or use of authenticated copies of such documents. The latter proposition appears not to be controverted, nor does there appear to be any prohibition against compliance with an order requiring the production of advertising matter or correspondence, such as that called for in the subpena. The material last mentioned should clearly have been ordered produced.

It may well be that literal compliance with the subpena requiring the production in Arizona of the corporate books would contravene Mexican law, and we are not disposed to hold the court in error for declining to enforce literal compliance. Nevertheless the court erred in failing to enter an order along one or more of several alternative lines suggested by the Commission. Appellee should be required to apply to the Mexican fiscal authorities for authorization to remove the corporate books temporarily for the purpose of the Commission's inspection.[6] It should be ordered, if such permission be not granted, to permit the Commission, at its option, to inspect the required books and records at its

---

[4] "For the purpose of all investigations which, in the opinion of the Commission, are necessary and proper for the enforcement of this sub-chapter, any member of the Commission or any officer or officers designated by it are empowered to administer oaths and affirmations, subpoena witnesses, take evidence, and require the production of any books, papers, or other documents which the Commission deems relevant or material to the inquiry. Such attendance of witnesses and the production of such documentary evidence may be required from any place in the United States or any Territory at any designated place of hearing." 15 U.S.C.A. § 77s(b).

[5] Several statutory provisions are involved. One of these (Article 65, Ley General del Timbre—Stamp Act) provides that books of account must be available at the warehouse, shop or office of the taxpayer, unless in the possession of some judicial or fiscal authority. Another (Article 33, Codigo de Comercio) obligates merchants to carry accounts and to record their operations in at least three books. Codigo Fiscal de la Federacion, Article 228 XV, provides that failure to keep books or other documents required by law in the places specified in the fiscal laws constitutes an offense (Article 236 I) punishable by fine for each offense.

[6] See authorities heretofore cited for rule that a court may order the doing of positive acts outside its territorial jurisdiction; see also Equitable Trust Co. v. Schwebel, D.C.E.D.Pa., 40 F.Supp. 112; Kempson v. Kempson, 63 N.J.Eq. 783, 52 A. 360, 625, 58 L.R.A. 484, 92 Am.St. Rep. 682.

Mexican office at a time to be specified, and to furnish the Commission with authenticated copies of any of the specified books and records which may be requested as the result of the inspection.[7] And as an alternative to this appellee should be ordered to produce authenticated copies of the several items specified in the subpena.[8]

While the matter arose on a motion to dismiss, the merits of the application were adequately inquired into so that there is no occasion for a further hearing.

The judgment of dismissal is reversed and the proceeding is remanded with directions forthwith to require enforcement of the subpena in the manner indicated.

---

[7] National Distilling Co. v. Van Emden, 1907, 120 App.Div. 746, 105 N.Y.S. 657; Wilson v. Van Dorn Iron Works, 106 Misc. 442, 174 N.Y.S. 684; Hobbs v. Tom Reed Gold Mining Co., 164 Cal. 497, 129 P. 781, 43 L.R.A.,N.S., 1112.

[8] National Distilling Co. v. Van Emden, 1907, 120 App.Div. 746, 105 N.Y.S. 657; Muller v. City of Philadelphia, 1908, 118 App.Div. 276, 103 N.Y.S. 387.