**FIRST NATIONAL CITY BANK OF NEW YORK, Petitioner-Appellee,**

v.

**INTERNAL REVENUE SERVICE OF UNITED STATES TREASURY DEPARTMENT, Respondent-Appellant.**

**No. 315, Docket 25528.**

United States Court of Appeals Second Circuit.

Argued June 8, 1959.

Decided Nov. 10, 1959.

Robert J. Ward, Asst. U. S. Atty., for Southern Dist. of New York, New York City (Arthur H. Christy, U. S. Atty., S. D.N.Y., New York City, on the brief), for respondent-appellant.

John A. Wilson, New York City (Shearman & Sterling & Wright, Michael J. DeSantis, and MacIlburne Van Voorhies, New York City, on the brief), for petitioner-appellee.

Before HINCKS and LUMBARD, Circuit Judges, and SMITH, District Judge.

HINCKS, Circuit Judge.

In this proceeding the First National City Bank of New York (hereinafter

called the "Bank") applied to the District Court to vacate or modify a summons to appear, testify, and produce books served on it by the Internal Revenue Service (hereinafter referred to as the "Service") under 26 U.S.C. § 7602. The summons called for the production before the Service in New York City of certain bank records relating to the account of Atlanta Corp. Ltd. (hereinafter called "Atlanta"), a Panamanian corporation with offices in New York City and Panama, Republic of Panama, whose tax liability was under investigation. Certain records in the Bank's New York City files were produced, but the Bank declined to produce other records, contending that they were physically located at its branch bank in the Republic of Panama, and hence beyond the reach of the subpoena. Nonproduction was justified, said the Bank, first, because the records were not in its possession, custody, or control; second, because the production of such records without Atlanta's consent or an order of a Panama court would violate sound national banking practice; and third, because such · production would also violate the constitution and laws of the Republic of Panama and established principles of international comity.

The District Court, relying on In re Harris, D.C.S.D.N.Y., 27 F.Supp. 480, modified the summons so as to require the production of local records only. D. C., 166 F.Supp. 21. On this appeal the Service argues that the Harris case was erroneously decided; that the Bank's control over the subject records has been sufficiently shown; that no showing has been made that either the constitution or the laws of Panama or international comity prevent production; and that compliance with the summons should be ordered upon reversal of the decision below. These contentions we sustain.

It has long been held that there is a presumption that a corporation is in the possession and control of its own books and records. In re Ironclad Mfg. Co., 2 Cir., 201 F. 66. Clear proof of lack of possession and control is necessary to rebut the presumption. A national bank, incorporated under the laws of the United States, would seem to be just as subject to the stated rule as any other corporation, unless there is something in the federal law regulating the conduct of such banks which either negatives the existence of any such presumption or rebuts it. The Bank insists that the presumption of control is negatived by 12 U.S.C.A. § 604, which we set forth in the margin.[1]

The "control" over its records upon which is founded the obligation of a corporation to produce them upon summons or subpoena *duces tecum* is not an esoteric concept. Any officer or agent of the corporation who has power to cause the branch records to be sent from a branch to the home office for any corporate purpose, surely has sufficient control to cause them to be sent on when desired for a governmental purpose properly implemented by a subpoena under 26 U.S.C. § 7602. In this case, the District Court recognized the existence of actual, practical control by the Bank over its Panamanian branch records and we think that finding was right. In re Rivera, D.C.S.D.N.Y., 79 F.Supp. 510; Hopson v. United States, 2 Cir., 79 F.2d 302. See also S. E. C. v. Minas De Artemisa, S.A., 9 Cir., 150 F.2d 215.

The Bank's contention that the effect of 12 U.S.C.A. § 604, especially as interpreted in In re Harris, supra, was to deprive it of sufficient control over records in Panama to be subject to the subpoena, was accepted by the court below. This ruling, however, we think was erroneous. Section 604, in terms and in

---

1. U.S.C.A., Vol. 12, § 604, reads as follows:

"§ 604. *Accounts of foreign branches; profit and loss*

"Every national banking association operating foreign branches shall conduct the accounts of each foreign branch inde-

pendently of the accounts of other foreign branches established by it and of its home office, and shall at the end of each fiscal period transfer to its general ledger the profit or loss accrued at each branch as a separate item."

intent, does not support the Bank's conclusion. As argued by the Service, § 604 is nothing more than a "bookkeeping" statute, designed to make examination into the financial condition of national banks, particularly the foreign operations of such banks, as simple as possible. Reduced to its simplest terms, it is an instruction to the national banks operating foreign branches to keep separate *accounts* for each such branch, and not to lump the *accounts* together or to include them in the accounts of the home office.

Moreover, § 604 with the companion Sections 601 to 603, of Title 12, all stem from Section 25 of the Federal Reserve Act of 1913, 38 Stat. 271, which under the caption of "Foreign Branches" shows not an intent to insulate the records of foreign branches from official scrutiny but, on the contrary, unmistakable intent that the branches shall report to the Comptroller of the Currency and shall at all times be subject to examination by the Federal Reserve Board. Indeed, Report 69, House of Representatives, 63rd Congress, 1st Session, accompanying H. R. 7837 which became the Federal Reserve Act of 1913, stated as the legislative objective that branch banks "shall be closely controlled by home institutions" even though the branches should conduct "their affairs separate from those of the home office in order that there may be no difficulty in ascertaining at any moment the distribution of the business of the institution."

It is true that relying in part on § 604 courts have held that in various commercial transactions between a branch bank and its home office the rights involved are to be determined as though the branch was acting at arm's length as an independent entity. See Pan-American Bank & Trust Co. v. National City Bank, 2 Cir., 6 F.2d 762, certiorari denied 269 U.S. 554, 46 S.Ct. 18, 70 L. Ed. 408. But from such doctrine it does not follow that in other situations not involving an arm's length relationship the manager of a foreign branch any more than the manager of a domestic branch or, indeed, an officer of the home office, is beyond the control of the Board of Directors who appointed him. To the extent that In re Harris is in conflict with this conclusion it is overruled.

■ Finally,[2] the Bank argues that production of the branch's records located in Panama would require action by personnel in Panama in violation of the constitution and laws of Panama. If such were the fact we should agree that the production of the Panama records should not be ordered. S. E. C. v. Minas De Artemisa, supra. However, the only evidence of that fact was contained in the affidavit of the Bank's expert in Panamanian law which in our view constituted insufficient basis for nonenforcement of the subpoena. His conclusion of constitutional violation was based on Article 29 of the Constitution which provided that "Correspondence and other private documents are inviolable and may not be seized or examined except by provision of a competent authority and by means of legal formalities. * * *" Assuming that this provision affords privilege against disclosure in favor of those whose affairs are the subject-matter of the disclosure, such as Atlanta, there is no showing that the Bank may invoke Atlanta's constitutional privilege as it seeks to do. Assuming, on the other hand, that this provision affords a privilege against disclosure to bystanders, such as the Bank, who have information relating to the affairs of others, there is no showing that criminal sanctions will attach if the Bank waives its privilege either voluntarily or at the command of its sovereign. Moreover, this is a case apparently falling within the stated exception—a subpoena issued by an officer of the United States Treasury Department under the control of a United States court and subject to all the "legal formalities" and safeguards of 26 U.S.C.

---

2. The contention that power to enforce the subpoena would conflict with sound banking policy we think so lacking in substance as to deserve no discussion.

§§ 7602–7605. The Constitution did not specify that the prohibition extended to the sovereign, either Panama or a foreign sovereign, or that the exception was limited to a *Panamanian* authority or *Panamanian* legal formalities. Nor was there evidence that such was its effect.

■ The contention that compliance with the subpoena would involve a violation of Panamanian statutory law was based largely [3] on Articles 88 and 89 of the Panamanian Code of Commerce which banned "any general * * * examination of the bookkeeping in the offices * * * of the merchants." When the Republic of Panama granted its license for the Panama branch it must have known that the Bank was created under, and subject to, § 25 of the Federal Reserve Act of 1913, 38 Stat. 273, whereby it was required to furnish information concerning the condition of the branch to the Comptroller of the Currency of the United States and to submit to examination on order of the Governors of the Federal Reserve System. Thus the very fact that the Republic of Panama licensed an American bank, which was subject to this provision of American law, to carry on a branch in Panama is some ground for inference that the prohibitions of the Panamanian Constitution and statute on which the Bank relies did not extend to examinations by, and disclosures to, duly authorized officers of the United States government. If the Bank cannot, as it were, serve two masters and comply with the lawful requirements both of the United States and of Panama, perhaps it should surrender to one sovereign or the other the privileges received therefrom. We hold now, however, only that the *ex parte* proofs submitted by the Bank were insufficient to excuse compliance.

We reverse and remand with a direction to reinstate the subpoena as it orig-

inally issued and in the event of noncompliance to explore in contempt proceedings under 26 U.S.C. § 7604 the ability of the Bank to comply without subjecting its personnel to criminal sanctions under Panamanian law.

Ordered accordingly.

---

3. The Bank's expert also points to the disclosure provisions of the Panamanian Code of Civil Procedure. But certainly these procedural provisions do not control disclosure pursuant to a subpoena of the United States pursuant to federal statute. Moreover, voluntary disclosure, not obtained through pursuance of these procedural provisions, has not been shown to be the subject-matter of any criminal sanction.