Clement J. INGS et al., Appellants,

v.

Murray FERGUSON, Trustee of Equitable Plan Company, Debtor, Appellee.

No. 378, Docket 26361.

United States Court of Appeals Second Circuit.

Argued June 29, 1960.

Decided Aug. 10, 1960.

See also 277 F.2d 319.

Shearman, Sterling & Wright, New York City, for appellant Clement J. Ings, Assistant Agent of New York Agency of The Bank of Nova Scotia.

Kelley, Drye, Newhall & Maginnes, New York City, for appellant New York Agency of The Toronto-Dominion Bank.

Thacher, Proffitt, Prizer, Crawley & Wood, New York City, for appellee.

Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.

MOORE, Circuit Judge.

These proceedings were instituted in the District Court for the Southern District of New York by orders to show cause (1) by the New York Agency of The Bank of Nova Scotia and (2) by the New York Agency of The Toronto-Dominion Bank, to quash subpoenas *duces tecum* served in New York on the Agencies requiring them to produce in New York records physically located in branches of the banks in Canada. From an order refusing to quash the Agencies appeal.

The appellee is Murray Ferguson, trustee of Equitable Plan Company, Debtor in a Chapter X reorganization in the United States District Court for the Southern District of California. Because of a desire to make further inquiry into assets of the Debtor, ancillary proceedings were brought in the Southern District of New York.

The immediate inquiry giving rise to the subpoenas relates to a stockholders' derivative action (Weinberger et al. v. Bradley) pending in the Supreme Court of the State of New York brought primarily to obtain the cancellation of 1,-000,000 shares of the stock of Doeskin Products, Inc. A settlement of that action has been proposed and referred to a referee to pass upon its fairness and adequacy. Although not a party to the state court action the Equitable Plan, as the holder of 198,480 shares of Doeskin stock, seeks information with which to challenge the fairness of the proposed settlement which returns to Doeskin only 250,000 shares of its stock out of 1,000,-000 shares allegedly held by or for the benefit of Lowell M. Birrell, a fugitive from justice, whose financial machinations are related to Equitable Plan. See Pettit v. Doeskin Products, Inc., 2 Cir., 1959, 270 F.2d 95.

The detailed allegations of the Trustee may be accepted as establishing for purposes of these proceedings the relevancy of the information sought to possible objections to the settlement which he may wish to interpose. The primary question, however, is the effect upon the New York Agencies of subpoenas calling for the production of records of banks of a foreign country, which records are located in that foreign country, Canada.

Briefly summarized The Bank of Nova Scotia subpoena requires the production of records of a transfer of $100,000 from The Chase Manhattan Bank to The Bank of Nova Scotia in Montreal and its disbursement; The Toronto-Dominion Bank subpoena of records of a transfer of funds between the Havana Branch of The Royal Bank of Canada and a Montreal branch of The Toronto-Dominion. The New York Agency of The Bank of Nova:

Scotia reports a transfer to the Sherbrooke & Union branch in Montreal and interposes no objection to producing its New York Agency records. The New York Agency of The Toronto-Dominion Bank reports no records of the transaction in New York.

Opinions (in affidavit form) from Canadian counsel for The Bank of Montreal, The Bank of Nova Scotia, The Toronto-Dominion Bank and The Royal Bank of Canada all came to the conclusion that Chapter 42 of the Statues of Quebec, 6–7 Elizabeth II, 1957–1958 respecting records of business concerns in the Province of Quebec prohibit the banks and their employees from sending outside the Province any of the documents demanded by the subpoenas. A letter from other Canadian counsel submitted by the Trustee indicates a different interpretation of the statute. It is not necessary to attempt an interpretation of Canadian law. The fact that a conflict of theories exists between Canadian counsel only demonstrates the problem inherent in the issuance of subpoenas having extra-territorial effect upon Canadian subjects and parties to the litigation and points to the desirability of having the impact of Canadian statutes passed upon by Canadian courts.

 An elementary principle of jurisdiction is that the processes of the courts of any sovereign state cannot cross international boundary lines and be enforced in a foreign country. Thus service of a United States District Court subpoena by a United States Marshal upon a Montreal branch of a Canadian bank would not be enforceable. However, amongst civilized nations, between which international comity exists, procedures have long been established whereby the requests of litigants in other countries seeking testimony and records are honored. Such reciprocity is évidenced by the laws which each of the sovereign states has enacted to enable this purpose to be achieved. Each state nevertheless by the very definition of sovereignty is entitled to declare its own national policy with respect to such limitations upon the production of records as its lawmakers may choose to enact.

For many years the time honored custom of seeking evidence in foreign countries, particularly in cases in which the aid of foreign courts may be necessary to secure the production of records, has been by letters rogatory. As the term implies this is a request made to the foreign court to give its aid, backed by its power, to secure the desired information. The Federal courts (and the New York State courts as well[1]) have recognized this procedure in their provisions for letters rogatory. 28 U.S.C.A. § 1781 (Fed.R.Civ.Pr. 28(b), 28 U.S.C.A.).

Provision for compliance with such requests is found in the Special Procedure Act of the Province of Quebec Chapter 342 (1941), section 16 which reads:

> "When, upon petition to that effect, it is shewn to the Superior Court or to one of the judges thereof, charged with the administration of justice in the district, that a court of any other Province of Canada, or of any other British possession, or of a foreign country, before which any civil or commercial case is pending, desires to have the evidence of any party or witness in the district, such court or judge may order that such party or witness may be examined under oath, either by means of questions in writing or otherwise, before any person mentioned in the said order, and may summon, by the same or by a subsequent order, such party or witness to appear for examination, and may order him to produce any writing or document mentioned in the order, or any other writing or document relating to the matter, and which may be in his possession. R. S.1925, c. 277, s. 16."

 Under this statute it would appear possible to secure both the testimony of witnesses and the production of the desired documents. Thus under the

1. New York Civil Practice Act, sec. 309.

laws of both the United States [2] and Canada procedures are available for securing evidence within the confines of the other's territory.

Subpoena power is not absolute. Even if exercised within proper territorial limits, the subpoena may be scrutinized by the courts. Every reason exists for careful scrutiny here. No claim is being made against either bank by any litigant. At most the bank is being called as a witness. The transactions did not originate in the New York Agencies. And the records sought are in the custody of branches in Canada. Under these circumstances it seems highly undesirable that the courts of the United States should countenance service of a subpoena upon a New York agency of a foreign bank which is not a party to the litigation and whose country has provided procedures for securing information, the production of which is consistent with its laws.

The Trustee advances the recent decision of this court in First National City Bank of New York v. Internal Revenue Service, 2 Cir., 271 F.2d 616, 618, certiorari denied 361 U.S. 948, 80 Ct. 402, 4 L.Ed.2d 381, as supporting the enforcement of the subpoena. In National City the subpoena was served at the main office in New York and required the production of records of a national bank located in its Panama branch. Sustaining the subpoena, the court said, "Any officer or agent of the corporation who has power to cause the branch records to be sent from a branch to the home office for any corporate purpose, surely has sufficient control to cause them to be sent on when desired for a governmental purpose properly implemented by a subpoena under 26 U.S.C. § 7602." There may be a serious question as to whether the manager of a New York Agency would have the power to direct the officers of a Canadian bank to send Canadian branch bank records out of the country in violation of a prohibitory statute and an opinion of counsel to that effect. However, it is unnecessary to resolve this question at this time because of other factors present. Even though the head office had control of its branches, enforcement of the subpoena was qualified in the event that compliance would violate the laws of Panama, the court saying, "If such were the fact we should agree that production of the Panama records should not be ordered" (271 F.2d at page 619). A similar result was reached by the district court in this case with respect to the records of the Havana branch of The Royal Bank of Canada. The court, relying on National City, granted the motion to quash on the ground "that disclosure of information with regard to deposits and transactions in this situation would violate Cuban law, and might subject the officers and employees of the Cuban branch to criminal penalties."

Upon fundamental principles of international comity, our courts dedicated to the enforcement of our laws should not take such action as may cause a violation of the laws of a friendly neighbor or, at the least, an unnecessary circumvention of its procedures. Whether removal of records from Canada is prohibited is a question of Canadian law and is best resolved by Canadian courts. Cf. Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055; Vanity Fair Mills, Inc. v. T. Eaton Co., 2 Cir., 1956, 234 F.2d 633, 645–647. Full opportunity to obtain such a decision is afforded to the Trustee by the procedural laws of this country and Canada. If upon such proceedings, i. e., letters rogatory, the records are produced the Trustee has by au-

---

2. 28 U.S.C.A. § 1782:

"The deposition of any witness within the United States to be used in any judicial proceeding pending in any court in a foreign country with which the United States is at peace may be taken before a person authorized to administer oaths designated by the district court of any district where the witness resides or may be found.

"The practice and procedure in taking such depositions shall conform generally to the practice and procedure for taking depositions to be used in courts of the United States."

thorized means achieved this desire. If on the other hand production were declared illegal, the motion to quash should be granted as indicated in National City and in the decision below because the exception of illegality under foreign law would have been met. Only if, despite a ruling that production of the records or sending them outside the country would not be illegal, were there a refusal to make such records available, would it become necessary to consider whether a subpoena should issue.

The banks argue that important policy questions as to branch banking throughout the world are presented; that a subpoena served on a branch in New York might necessitate a search for, and the production of, records in hundreds of branches of foreign banks, and that were the subpoenas here attempted to be enforced, retaliatory laws might be enacted to the detriment of American business interests. Without minimizing the force of these arguments the decision here need not rest upon them except as they bear upon the exercise of the court's discretionary power.

Nor should the desire for haste because of the pendency of the New York stockholders' action justify a departure from authorized procedures. Were temporary expediency in every situation to create its own rules, well established principles of jurisdiction and due process would surely suffer. The zeal of the Trustee in endeavoring to benefit the many persons who may have been victimized by the indicted fugitive from justice is commendable but it should not be the basis for permitting him to avoid following the prescribed process for seeking information in a foreign country.

The order below should be modified by restricting it to records and other documents specified in the subpoenas which may be in the possession of the New York Agencies of The Bank of Nova Scotia and The Toronto-Dominion Bank, respectively, without costs.