Application of CHASE MANHATTAN BANK to Modify a Subpoena Duces Tecum Issued by the Clerk of the Southern District upon the Request of the United States Attorney, Directing The Chase Manhattan Bank to Produce Before the United States Grand Jury of the Southern District Specified Records of The Chase Manhattan Bank.

United States District Court
S. D. New York.
Feb. 9, 1961.

wherever held" relating to named parties. Petitioner's motion seeks relief insofar as the subpoena directs production of records maintained by the Bank's Panama branch. These records are presently in the Republic of Panama. Apparently all other books and papers relating to the named parties have been produced.

Petitioner contends that compliance with the subpoena will result in violation of the Constitution and laws of Panama and will subject its Panamanian employees to criminal prosecution. In support of its contention two Panamanian legal opinions and a translation of a recently enacted statute are offered.

The opinion of Messrs. Arias, Fabrega & Fabrega, attorneys of Panama, states that compliance would be in violation of Panamanian laws and would subject local officers and employees to a criminal penalty of imprisonment and fine. But this opinion seems to be the result of a strained interpretation. This firm suggests that a law providing that "any Government official who shall unduly divulge information concerning banks * * * shall be subject to a fine * * * and to the loss of the official office which he holds" is applicable to the Chase Manhattan. Similarly the Arias firm finds applicability in the following provisions:

"Whoever by reason of his * * occupation should have knowledge of a secret, the divulging of which may cause damage, and should divulge same, shall be punished. * * * "

"Whoever by an act or omission which is either culpable or negligent shall cause damage to another, shall be obligated to indemnify the damage caused."

The ingenious interpretation of those sections urged by these attorneys would not have occurred to this Court. In fact, unsupported by further authority interpreting these provisions, the Court cannot accept the proffered conclusions. This decision is additionally supported by petitioner's second opinion letter.

Milbank, Tweed, Hope & Hadley, New York City, for petitioner; Roy C. Haberkern, Jr., Samuel Ross Ballin, Andrew J. Connick, New York City, of counsel.

Morton S. Robson, U. S. Atty., Southern Dist. of New York, New York City, for respondent; Peter H. Morrison, Asst. U. S. Atty., New York City, of counsel.

DAWSON, District Judge.

The Chase Manhattan Bank (hereinafter referred to as "the Bank") has brought a motion to modify a subpoena duces tecum dated January 17 and returnable January 27, 1961. The subpoena directs the Bank to produce "any and all books, records and documents,

Senor Carlos Icaza of Icaza, Gonzalez-Ruiz & Aleman, a Panamanian attorney, writes that "removal of records or documents of the Panama Branch * * * is a violation of the local laws, including the Constitution, although no penalties are imposed therefor." His first contention is that compliance would violate Article 29 of the Constitution which provides that "correspondence and other private documents are inviolable, and they shall not be seized or examined except by order of a competent authority and in accordance with legal formalities."

Senor Icaza points out that "competent authority" must mean Panamanian officials. But, in the absence of authority to the contrary, a court in Panama might very well hold a duly constituted United States Court to be encompassed within the phrase. Cf., First Nat. City Bank of New York v. Internal Revenue Service, 2 Cir., 1959, 271 F.2d 616, 619–620.

The constitutional protection may be claimed by anyone in possession of such records: thus, the Bank. However, it does not appear from the moving papers that the Bank is claiming the benefits available under the Constitution. They are instead saying that they are *unable* to comply due to local law. That local law now appears to be merely an optional protection. Ibid.

Senor Icaza at last finds potential violation in Articles 88 and 89 of the Code of Commerce:

"*Article 88* No authority * * may make or order any inquiry * * * for the purpose of finding out whether or not the merchant keeps his commercial accounting books in due form, nor make any general investigation or examination of the Bookkeeping in the offices or bureaus of the merchants."

"*Article 89* Outside of [cases of decedents' estates, bankruptcy, or liquidation] * * * inspection of specific entries in the books and documents relating thereto may be ordered only upon petition by an interested party or ex parte order,

when the person to whom records belong may have interest or responsibility in the matter in question."

Once more the applicability of these sections, despite Senor Icaza's opinion, seems questionable. The first phrase of Article 88 talks of an inquiry into whether the merchant has kept his books "in due form." That certainly is not here in issue. The latter portion may also be read regarding "due form" in which event Article 88 is wholly inapplicable. If, however, the sentence is severable, then the second phrase broadly construed relates to a "general investigation." The subpoena is not pursuant to such a general investigation and so Article 88 still does not appear applicable.

It is not necessary to analyze these sections any further, for even if they were applicable it is already settled that they would not preclude compliance. In First Nat. City Bank of New York v. Internal Revenue Service, 2 Cir., 1959, 271 F.2d 616, 620, the court said, in regard to Articles 88 and 89:

"* * * When the Republic of Panama granted its license for the Panama branch it must have known that the Bank was created under, and subject to, § 25 of the Federal Reserve Act of 1913, 38 Stat. 273, whereby it was required to furnish information concerning the condition of the branch to the Comptroller of the Currency of the United States and to submit to examination on order of the Governors of the Federal Reserve System. Thus the very fact that the Republic of Panama licensed an American bank, which was subject to this provision of American law, to carry on a branch in Panama is some ground for inference that the prohibitions of the Panamanian Constitution and statute on which the Bank relies did not extend to examinations by, and disclosures to, duly authorized officers of the United States government * * *."

Of all that is offered by the petitioner only a translation of a recently enacted

Panamanian statute seems to support their position. Attorneys for the Bank inform the Court in their affidavit that they learned of this statute via a telephone conversation on January 29, 1961. In pertinent part the statute reads as follows:

> "Article 89. * * *
>
> "No authority is empowered to require the businessman to supply copies or reproductions of his books (or part of them), correspondence or other documents in his power. When it is necessary to obtain some information in this respect, the proper order to produce will be issued. The businessman who supplies copies or reproductions of the contents of his books, correspondence or other documents to be used in litigation abroad in compliance with the order of authority which is not the Republic of Panama, will be punished by a fine no greater than B/100."
>
> "Article 93. * * *
>
> "Accounting books, correspondence and other documents which the businessman must keep will be maintained at his business establishment in order that they may be examined by the authority competent for such examination. It is prohibited to take them outside the country. The violation of this prohibition will be punished by a fine no greater than B/100."

These sections are offered *in vacuo*. We are given none of the background or intent from which these amendments spring. We are given no interpretation —only words. The sections themselves are not written so that there can be no dispute or doubt as to their meaning.

The particular portion of amended Article 89 contains an apparent internal conflict. The first sentence speaks in terms of the *disability* of an authority to *require* a businessman to supply copies of records. But the Bank is not refusing on the ground that the subpoena is an ineffective exercise of authority. Sentence 1 looks only to the *power* to *force* an *unwilling* businessman to comply. The moving papers do not suggest that this is the case.

Sentence 2 appears to contradict sentence 1. It provides statutory authority for obtaining the information prohibited by sentence 1, i. e., a "proper order to produce will be issued."

Sentence 3 appears to be directly in point in that the businessman who supplies copies of his books for use in litigation abroad will be subject to a fine. But in view of the permissive character of sentence 1 and the contradiction of sentence 2, this Court does not feel that it has a right to attempt interpretation of a statute enacted just days ago.

The prohibition of Article 93 need not be discussed for it is obvious that that provision is aimed at foreclosing removal of records to prevent local examination.

 The party relying on foreign law has the burden of proof. It must establish precisely what that law is and how it is interpreted. This may be done by sworn affidavits. Generally affidavits are the minimal formal requirements. See, Ings v. Ferguson, 2 Cir., 1960, 282 F.2d 149, 151; In re Equitable Plan Co., D.C.S.D.N.Y.1960, 185 F.Supp. 57, 60. But here, not even that is done. Attorneys for Chase Manhattan are not competent to offer expert testimony on foreign law. The Panamanian letters are not sworn to. Sworn affidavits are safeguards of truth and accuracy. Such a requirement should not be lightly dismissed. The very informal telephone conversation which suggested that a newly passed law should be considered is an unacceptable height of informality by a party with the burden of proof. A mere translation of a foreign statute without more, without the background, without the context or the area of internal application is insufficient. Usatorre v. The Victoria, 2 Cir., 1949, 172 F.2d 434. In particular the specific portion of potential applicability contains ambiguities which a United States Court is not competent to resolve.

■ If compliance with a subpoena duces tecum necessitates violation of foreign law, then it should be modified to avoid such an undesirable result. First Nat. City Bank of New York v. Internal Revenue Service, supra, 271 F.2d at page 619; Ings v. Ferguson, supra, 282 F.2d at page 152. The suggestion that all that should be avoided is a violation which may subject a party to criminal prosecution finds some support in the cases. See, e. g., Societe Internationale Pour Participation Industrielles Et Commerciales, S. A. v. Rogers, 1958, 357 U.S. 197, 211, 78 S.Ct. 1087, 2 L.Ed.2d 1255; In re Equitable Plan Co., D.C.S.D.N.Y.1960, 185 F.Supp. 57, 60. However, it is not necessary to decide in the present case whether a subpoena should be modified in the event of any violation of foreign law or whether that action should be strictly limited to cases involving criminal prosecution.

■ The imminence of violations as a result of compliance with the subpoena must be clearly established. The interests of justice require that this burden be carried by the petitioner. This the Bank has failed to do.

■ Where good faith non-compliance is shown, the party directed to act will be relieved of that duty. Good faith may not even be considered until petitioner has proved that compliance will result in violation of foreign law. Once that is established it must be proved that non-compliance is the result of an inability to comply; if a *bona fide* effort has been made to comply, good faith is proved and the petitioner is exonerated. Societe Internationale Pour Participations Industrielles Et Commerciales v. Rogers, supra. Where it is likely that compliance will result in violation of the laws of a friendly country, petitioner should establish his good faith by pursuing all methods available under foreign local law to satisfy the subpoena. See, Ings v. Ferguson, 2 Cir., 1960, 282 F.2d 149, 152–153.

The Chase Manhattan Bank has made no efforts under local laws to comply with the request set forth in the subpoena. It appears from the letters and statute presented by the petitioner that such courses are very likely available under Panamanian law. The Bank should exert every effort to produce the requested information, following procedures set forth under local law. Securities & Exchange Comm. v. Minas De Artemisa, 9 Cir., 1945, 150 F.2d 215, 218–219.

■ The proofs submitted by the Bank were insufficient to excuse compliance. The petition is therefore denied. In the event of non-compliance with the subpoena duces tecum, the ability of the Bank to comply without subjecting its personnel to criminal prosecution under Panamanian law may be tested in appropriate contempt proceedings. First Nat. City Bank of New York v. Internal Revenue Service, supra, 271 F.2d at page 620; In re Reicher, D.C.S.D.N.Y. 1958, 159 F.Supp. 161. So ordered.