In the Matter of Grand Jury Subpoena Duces Tecum addressed to the **FIRST NATIONAL CITY BANK.**

No. M 11–188.

United States District Court
S. D. New York.

May 21, 1968.

Carl W. Schwarz, Attorney, Department of Justice, New York City, for plaintiff.

Shearman & Sterling, New York City, for defendant; by Henry Harfield and Michael J. Aratingi, New York City, of counsel.

## ORAL OPINION *

POLLACK, District Judge.

On March 7, 1968, a Grand Jury of this Court investigating an alleged violation of the Federal Antitrust Laws, caused a subpoena duces tecum to be issued upon the witness First National City Bank.

Among other things, this subpoena called for the production of certain documents located in a branch maintained by the City Bank in Frankfurt, West Germany.

On April 16, 1968, City Bank refused to produce these records to the Grand Jury on the ground that to do so would violate German law and possibly subject City Bank to liability for damages to the two customers to whom the records refer.

On May 8, 1968, this Court ordered the City Bank and its vice-president, William T. Loveland, to produce the required records on May 10, 1968, before the Grand Jury. That order was disobeyed.

Proceedings to determine whether the Bank and Mr. Loveland, as vice-president, should be found in civil contempt have been initiated and are before the Court.

The petitions in each of those instances were met with the answering affidavits of the respective respondents.

The proof in the case has included the transcript of the proceedings heretofore had before the Court on May 8, 1968, together with the evidence adduced to the Court today.

The acts charged as contempt briefly are the disregard of the order of this Court of May 8, 1968. With respect to the jurisdiction of the Court, it is conceded, and certainly not contested, that the subpoena was valid; that the Court has jurisdiction over the respondents,

the bank and Mr. Loveland; that the Bank's customers involved here, located in Frankfurt, Germany, are respectively a German proprietorship and a New York corporation affiliated with the German proprietorship, doing business in Frankfurt, West Germany.

The Government contends that the Grand Jury proceedings have been impeded and delayed, if not also frustrated, by the conduct of the respondents, and that the term of the Grand Jury is running out while the Government's fruitless efforts to require production of the requested documents have been pursued.

Basically, the defense to the contempt citations is that the Court is being requested to order the respondents to violate the laws of Germany and that this is unfair and that international comity should not permit such a requirement.

The documents demanded called for legitimate objects of a Grand Jury investigation. The Court ordered the respondents to produce such documents.

The individual respondent has testified both to the Grand Jury and before this Court that he has the power to produce the documents or cause them to be produced merely upon request.

The respondents have decided that they will not obey the Court's order. The excuse for non-production, among others, is that the Bank's customers do not desire that they be produced, and they refuse to obtain an injunction in Germany to restrain production, although it has been clearly indicated through the expert proof adduced by the respondents that an injunction is easily obtainable ex parte and that it would take only an hour or two to repair to the Court.

The Bank's customers thus have the ready means to establish a public aspect to their secrecy contention. They can readily secure, if warranted, an injunction order from a Court at little expense, as I have said, in ex parte proceedings, but have chosen not to do so, relying rather on the threat of economic reprisal against the Bank if it conforms to this Court's order to produce the records.

* Affirmed on appeal, —— F.2d —— (2 Cir. 1968).

Criminal penalties cannot occur for a disclosure made by the Bank or its officials.

The Bank's agreement with its customer saves it harmless of civil damages for compliance with orders of this Court (see Paragraph 25 of the agreement which has been marked in evidence as Exhibit 17).

Bank secrecy, at all events, does not go to the Bank's work product or records of transactions in which the Bank is a participant, and that has not been produced or properly accounted for.

The Bank has not attempted at any time since it received its subpoena 70 days ago on March 7, 1968, to inventory the records in its possession, which would satisfy the command of the subpoena duces tecum.

Those records have not, according to the testimony of Mr. Loveland, even been examined or collated, and certainly have not been transmitted to the New York head office.

The possible claim for damages threatened by the customer seems to be wholly speculative and utterly remote.

■ An order for compliance with the subpoena duces tecum is not an intrusion upon the Sovereignty of Germany. The fact that the records are beyond the territorial jurisdiction of this Court is not legal justification for non-production.[1] No public act of Germany prohibits the production of the records here sought.

The enforcement of our laws will not cause a violation of the laws of Germany; rather, the customary practices of an industry are involved. Where privileged status has been deemed to warrant public protection, that has been expressed in statutory inhibitions as, for example, in the case of doctors and lawyers and others, as recounted in the testimony.

The Bank's customer has elected not to take the protection of German law which, if its resistance is in good faith, could be accomplished by it in an ex parte proceeding. This may be indicative of absence of such an interest as should be sheltered by the foreign law so far as concerns control of American banks doing business abroad.

NO PUBLIC LAW OF Germany penalizes disclosure of bank records other than the law which would penalize a violation of an injunction, and an injunction does not exist here.

■ It is hardly debatable that fear of prosecution in a foreign land constitutes a weighty excuse for non-production,[2] and there may be other excuses for non-production which rise to the level where a public concern has been expressed in public laws or through the Courts,[3] but here there are no internal acts of the foreign state or its Courts preventing compliance.

■ The negative economic impact on the bank in Germany, if any, of complying with American law and the risk of loss of business and business opportunities in Germany when it becomes known that potential violators of American antitrust laws may have their activities

---

1. Ludlow Corp. v. DeSmedt, 249 F.Supp. 496 (S.D.N.Y.1966), aff'd sub nom. Federal Maritime Commission v. DeSmedt, 366 F.2d 464 (2d Cir. 1966), cert. den. 385 U.S. 974, 87 S.Ct. 513, 17 L.Ed.2d 437 (1966) ; In re Harris, 27 F.Supp. 480 (S.D.N.Y.1939).

2. Societe Internationale, etc. v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) ; Application of Chase Manhattan Bank, 297 F.2d 611 (2d Cir. 1962) ; Federal Maritime Commission v. DeSmedt, Note 1, supra, First National City Bank of New York v. Internal Revenue Service, 271 F.2d 616 (2d Cir. 1959), cert.

den. 361 U.S. 948, 80 S.Ct. 402, 4 L.Ed.2d 381.

3. In Application of Chase Manhattan Bank, supra, Note 2, the Court of Appeals (per Moore, C. J.) stated that
   " * * * we need not now decide whether the sanctions must always be criminal [to excuse non-compliance with a subpoena]. * * * "
   The Court held that production of documents in the custody of the Panama branch of the Bank would violate a Panamanian criminal statute (p. 613) ; cf. Ings v. Ferguson, 282 F.2d 149, 82 A.L.R.2d 1397 (2d Cir. 1960).

examined and revealed by American banks to grand juries in secret proceedings constitute insufficient basis for non-enforcement of the subpoena.

Indeed, so far as concerns Boehringer Manheim Corporation of New York, what is being sought here is, in essence, asylum for records of an American citizen which conducts business abroad through an American bank.

■ It would not be consonant with American public policy to permit an American citizen to claim bank secrecy, in a foreign jurisdiction which does not have a public law calling for such secrecy, and thus to block production of records which could be produced by the mere ipse dixit of the American holder thereof who has been served with the subpoena.

There is no evidence to show that Congress wished to render a department of Government, charged with securing compliance with an important segment of the commerce of the United States—the antitrust laws—powerless to require by subpoena that residents of this country should produce relevant documents before a grand jury simply because they are kept outside of our borders.[4]

■ The Governmental interest in antitrust regulation is sufficiently compelling to subordinate the conflict of interest created by the commercial preference of the respondents to keep private the affairs of the object of the Government's interest.

The State's interest has not been "pressed, in this instance, to a point where it has come into fatal collision with an overriding"[5] constitutionally protected right of respondents and their customers.

■ Absent here also is a clash of sovereignties which the Courts have avoided by excusing compliance from subpoenas of the United States pursuant to Federal Statute.[6] It is only when the rulings of two sovereignties or their public concerns clash that the principle of comity properly comes into play.

It is also to be noted that compliance with the subpoena will result in exposing a customer's records only to a grand jury. The proceedings of such a body are, of course, secret; no publication of evidence received necessarily occurs and there is no concern that publishing data would be inimical to the business interests of the company involved or would allow its competitors to obtain information otherwise unavailable to them.

■ The Bank and its officer Loveland have failed to carry the burden of showing that a violation, in the sense of which that word is properly used as a bar to compliance, will result from compliance with the subpoena.

Furthermore, there has not been good faith non-compliance with the Grand Jury subpoena. Good faith would have required as a minimum that the respondents should have ascertained the existence of the material sought and its nature and its scope.[7] This neither the Bank nor Mr. Loveland did.

Consequently, it is ordered that the individual respondent be committed to jail until he shall have complied with the

---

4. Cf. Federal Maritime Commission v. De-Smedt, supra, Note 1. The Court of Appeals therein considered the power of the Maritime Commission to subpoena documents located in foreign countries. The Court (per Friendly, C. J.) stated at 366 F.2d page 469, that:

"It * * * requires rather strong evidence to show that Congress wished to render an agency responsible for regulating an important segment of the foreign commerce of the United States powerless to require by subpoena that residents of this country and non-residents doing business here should produce relevant documents simply because these are kept outside our borders."

5. Cantwell v. State of Connecticut, 310 U.S. 296, 307, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), quoted in Uphaus v. Wyman, 360 U.S. 72, 81, 79 S.Ct. 1040, 3 L.Ed.2d 1090 (1959).

6. See Note 3, supra.

7. Cf. Application of Chase Manhattan Bank, 191 F.Supp. 206, 210 (S.D.N.Y. 1961).

Court order, but not in excess of sixty days from the date of commencement of the commitment.

The Bank is fined $2,000 a day until it shall have complied with the Court order.

Submit findings of fact and conclusions of law accordingly.