The Laitram Corporation sued for breach of contract and breach of fiduciary obligations by the defendants who were formerly plaintiffs sales agents in Europe and elsewhere. Defendants are John F. Hale, an American citizen residing in Switzerland, and Pantrade S.A., a corporation (solely owned by Hale) organized under the laws of Panama with its principal place of business in Switzerland. Both Hale and his corporation filed exceptions of lack of personal jurisdiction[1] and improper service of process which were overruled.
After dismissal of the exceptions both parties commenced substantive discovery. Defendants’ interrogatories to Laitram were answered and depositions were taken of persons connected with Laitram. Lai-tram made numerous requests for Hale to appear at a mutually convenient time and place for his deposition, but Hale refused to make himself available. Plaintiff then propounded interrogatories and document requests which were served by mail on defendants’ New Orleans counsel who forwarded them to defendants in Switzerland. The interrogatories primarily involve defendants’ relationship with Laitram and defendants’ operations as sales agents.
Defendants objected to all of the 52 interrogatories, alleging that Swiss law prohibits a response, and attached letters from their Swiss attorney and the Swiss Federal Prosecutor’s Office to that effect.
Plaintiff moved to compel answers to the interrogatories and for Hale to give his deposition: defendants objected. The lower court granted the motion to compel and defendants now seek writs, alleging that their response will subject them to potential criminal prosecution in Switzerland.
Defendants base their fear on Articles 271 and 273 of the Swiss Penal Code, as interpreted by their Swiss counsel and by the Swiss Prosecutor’s Office. According to translations in the record the articles provide:
Article 271:
Whoever performs acts on Swiss territory on behalf of a foreign state which fall within the competence of a government authority or a government official, whoever performs such acts on behalf of a foreign party or another foreign organization,
whoever furthers such acts,
shall be punished by imprisonment or, in serious cases, by penitentiary.
Article 273:
Whoever spies out a manufacturing or business secret for the purpose of making it accessible to a foreign official, foreign organization or foreign private enterprise, or their agents,
whoever makes accessible a manufacturing or business secret to a foreign official, foreign organization or foreign private enterprise, or their agents,
shall be punished by imprisonment or, in serious cases, by penitentiary. A fine may be combined with the jail sentence.
In support of their expansive construction of these articles, defendants cite an opinion letter which they solicited from the Swiss Federal Prosecutor’s Office which states:
[T]he direct postal delivery of the ques-tionary to your clients contradicts the federal provisions relating to the international judicial assistance both in civil and in criminal matters. Considering that the service of this questionary took place through the counsels of the opposing par *271 ty for pending legal proceedings, this concerns, according to Swiss law, a procedural act belonging exclusively to a public authority or a civil servant, regardless of whether, according to American procedural law, the subject matter of the lawsuit is to be compiled by the parties. Hence it follows that the procurement of evidence in Switzerland for foreign judicial proceedings is admissible only within the framework of the official international legal aid channels. The authority competent for this at the federal level is the Federal Office for Police Matters. The American plaintiff, i.e. the firm of LAI-TRAM Corp., is bound, like other foreign litigant parties, to keep to this course of action.
Defendants also rely on a law review article[2] which stresses the Swiss government’s view that all official matters pertaining to foreign judicial proceedings should be channeled through the Swiss governmental offices. In the article Prof. Miller declares that “the Swiss insistence upon official intervention is based upon Art. 271 of the Swiss Penal Code” [quoted above], but he admits that:
[S]wiss courts have never had occasion to apply article 271 to the service of documents in connection with proceedings pending before a foreign tribunal; the instances in which the provision has been applied involve either egregious encroachments upon Swiss sovereignty or obvious attempts to circumvent Swiss Law. Nonetheless, some Swiss scholars believe that its proscriptions apply to service by a foreign official or by a person acting on behalf or under the imprimatur of a foreign tribunal, and the Swiss Federal Department of Justice and Police has taken the position that article 271 forbids service without the intervention of the Swiss authorities even when made by one private party on another or when the papers are sent by the attorney for one party to the attorney for the other party.
According to Prof. Miller, the Swiss government does not allow oral depositions involving foreign litigation to take place privately in Switzerland. He also notes that “Letters rogatory ordinarily represent the only practical way to ... compel testimony from a witness in Switzerland.”
Defendants also cite Ings v. Ferguson, 282 F.2d 149, (2d Cir.1960) wherein the court modified a subpoena duces tecum served on a New York agent of a Canadian bank seeking production of records located in Canada. While there was conflicting evidence as to whether such production violated the laws of Quebec, the court stated:-
It is not necessary to attempt an interpretation of Canadian law. The fact that a conflict of theories exists between Canadian counsel only demonstrates the problem inherent in the issuance of subpoenas having extraterritorial effect upon Canadian subjects and parties to the litigation and points to the desirability of having the impact of Canadian statutes passed upon by Canadian courts.
An elementary principle of jurisdiction is that the processes of the courts of any sovereign state cannot cross international boundary lines and be enforced in a foreign country. Thus service of a United States District Court subpoena by a United States Marshal upon a Montreal branch of a Canadian bank would not be enforceable.
[[Image here]]
For many years the time honored custom of seeking evidence in foreign countries, particularly in cases in which the aid of foreign courts may be necessary to secure the production of records, has been by letters rogatory.
⅜ ⅝: ⅜ # ⅜: sfc
Upon fundamental principles of international comity, our courts dedicated to the enforcement of our laws should not take such action as may cause a violation of the laws of a friendly neighbor or, at *272 the least, an unnecessary circumvention of its procedures.
[[Image here]]
Subpoena power is not absolute. Even if exercised within proper territorial limits, the subpoena may be scrutinized by the courts. Every reason exists for careful scrutiny here. No claim is being made against either bank by any litigant. At most the bank is being called as a witness. The transactions did not originate in the New York Agencies. And the records sought are in the custody of branches in Canada. Under these circumstances it seems highly undesirable that the courts of the United States should countenance service of a subpoena upon a New York agency of a foreign bank which is not a party to the litigation and whose country has provided procedures for securing information, the production of which is consistent with its laws.
Thus, Ings v. Ferguson, supra, repeatedly stressed that the foreign bank under subpoena was not a party to the suit, that there was no claim against it by any litigant, and that “at most the bank is being called as a witness.” The court refused to compel a foreign bank not a party to the litigation to produce confidential records of its customers’ transactions without going through diplomatic procedures.
We find Ings distinguishable from this case. Here a party to the litigation in this forum (the defendants), who have conducted extensive discovery of their adversary (the plaintiff) and who responded to one set of interrogatories, now refuses to provide discovery because of a sudden fear of criminal prosecution by the Swiss government.
The same Swiss codal provisions were invoked with much more serious concern by the plaintiff in Societe Internationale Pour Participation Industrielles et Commerciales v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). There our United States Supreme Court held that discovery of documents in Switzerland was properly ordered by a federal district court, despite the plaintiff-recipient’s good faith and a judicial finding that the Swiss criminal law prevented compliance. The Societe Internationale litigation was based on Rule 37 of the Federal Rules of Civil Procedure, a provision virtually identical to LSA-C.C.P. Arts. 1469 and 1471. In Societe Internationale a Swiss company sued in federal court to recover assets seized by the United States during World War II. Our government’s defense was that the plaintiff had dealt with Nazi interests during the war, so it served requests for production of numerous documents relating to that claim. The documents were in Switzerland and many were constructively seized by the Swiss government which prohibited their production. There was no question of collusion between the plaintiff company and the Swiss government; plaintiff had borne the entire burden of securing the Swiss government’s consent to release the documents and had actually succeeded in obtaining permission to furnish over 200,000 documents. Nonetheless, the district court dismissed plaintiff’s suit because of its noncompliance with the document production order. The Supreme Court found that, under the circumstances, dismissal was too severe a sanction, but it specifically affirmed the trial court’s authority to mandate such discovery, despite the prohibitions of the Swiss criminal law. The Court declared:
[W]e think that a party “refuses to obey” simply by failing to comply with an order .... Whatever its reasons, petitioner did not comply with the production order. Such reasons, and the willfulness or good faith of petitioner, can hardly affect the fact of noncompliance and are relevant only to the path which the District Court might follow in dealing with petitioner’s failure to comply. 357 U.S. at 208, 78 S.Ct. at 1094
The Supreme Court further held that, despite plaintiff’s good faith and its actual inability to comply with the discovery order, plaintiff could be severely penalized by the district court:
This is not to say that petitioner will profit through its inability to tender the *273 records called for.... It may be that in a trial on the merits, petitioner’s inability to produce specific information will prove a serious handicap in dispelling doubt the government might be able to inject into the case. It may be that in the absence of complete disclosure by petitioner, the District Court would be justified in drawing inferences unfavorable to petitioner as to particular events. So much indeed petitioner concedes....
On remand, the District Court possesses wide discretion to proceed in whatever manner it deems most effective. It may desire to afford the Government additional opportunity to challenge petitioner’s good faith. It may wish to explore plans looking toward fuller compliance. Or it may decide to commence at once the trial on the merits. We decide only that on this record dismissal of the complaint with prejudice was not justified. 357 U.S. at 212-13, 78 S.Ct. at 1096
The rule of Societe Internationale was applied in In Re Uranium Antitrust Litigation, 480 F.Supp. 1138, 1145 (N.D.Ill.1979), in which the court held:
Once personal jurisdiction over the person and control over the documents by the person are present, a United States court has power to order production of the documents. The existence of a conflicting foreign law which prohibits the disclosure of the requested documents does not prevent the exercise of this power.
Similarly, the plaintiff in General Atomic Co. v. Exxon Nuclear Co., 90 F.R.D. 290 (S.D.Cal.1981) moved for sanctions after the defendant failed to produce documents protected by Canadian Security Regulations. The court specifically found that: (1) production of the documents would violate Canadian Security Regulations punishable by up to five years imprisonment and (2) defendant had unsuccessfully negotiated with the Canadian government for relaxation or waiver of the Regulations, had pursued the matter in Canadian courts, and had taken every reasonable effort to overcome the prohibitions of the Regulations.
The discovery was properly ordered and sanctions were imposed on the defendant. The court chose not to dismiss the case, but instead ordered that certain allegations would be presumed true, the principal defense would be struck, certain otherwise-inadmissible documents would be admitted, and costs and attorneys’ fees would be awarded.
The defendants in this case have not been advised by the Swiss government that sending the requested documents and answers to the interrogatories would subject them to criminal sanctions. Defendants appear to have confused the provisions of Swiss Penal Code Art. 271, which may, in the Swiss view, affect the validity of plaintiffs service of the discovery requests, with the substantive proscriptions of Swiss Art. 273 regarding disclosure of business secrets. In the Swiss prosecutor’s letter, defendants were advised:
... the provisions relating to legally protected secrets, hence in particular Art. 273 of the Swiss Penal Code, are also to be observed by the examined witness or the person giving information within the scope of legal aid proceedings. We are not in a position to issue the authorization desired by you to furnish the information requested by the plaintiff, because the penal provision made mention of does not provide for such an authorization. The person questioned is to decide on his own responsibility how far he may go in giving information. As we are not able to grasp the legally relevant facts on the basis of the documents submitted to us, we are not in a position either to procure you pertinent hints. (Our emphasis.)
The Swiss Prosecutor’s Office did, however, furnish the following guidelines for defendants to use in determining whether any of the documents requested would violate Art. 273:
1. As far as an information regards exclusively circumstances in which solely the person giving information has a secrecy interest, the decision as to the
*274 disclosure of such interests may be left to the person concerned.
2. According to Art. 273 of the Penal Code it is, however, prohibited and liable to punishment to give information to foreign parts about economic conditions
a) in which there exists a (direct) general Swiss interest of secrecy, or
b) in the secrecy of which a third party that has not previously and in all due form agreed to the disclosure, owns an interest worth being protected.
Defendants have made no showing that any of the requested information would violate protected secrecy interests. Since the requested documents concern defendants’ relationship with plaintiff corporation, and plaintiff is obviously not asserting a privacy interest therein, defendants do not appear to be in any real danger of prosecution if they produce the documents.
Defendants’ real argument appears to be that plaintiff’s service of the discovery requests by direct mail violated Art. 271 of the Swiss Penal Code and that defendants would likewise violate this provision if they mailed their responses directly to plaintiff’s counsel in New Orleans. The opinion from the Swiss Prosecutor’s Office says nothing about any criminal culpability of defendants under Art. 271 but merely asserts: “The American plaintiff, i.e. the firm of Laitram Corp., is bound, like other foreign litigant parties, to [procure evidence in Switzerland through official channels].”
We note, however, that defendants are not responsible for violations of Swiss law committed by plaintiff in serving the requests directly, in accordance with the procedural law of Louisiana, the forum state. If defendants are genuinely afraid to send answers and documents directly from Switzerland to the U.S., they are certainly free to submit their responses to the Swiss authorities for approval and to have them delivered to plaintiff corporation in any manner mandated by the Swiss government. Likewise, we see no reason why defendant Hale should not make himself available for a deposition at some convenient location outside Switzerland, since Swiss law presents obstacles to private depositions in Switzerland.
It is obvious that defendants have not made a good-faith attempt, or any attempt, to comply with the discovery requests. We are satisfied the district court had authority to order the defendants to comply, even if defendants were in good faith (they appear not to be) and a real danger of prosecution by the Swiss government were present (which is not apparent).
The writ is therefore denied.

. Plaintiff propounded preliminary interrogatories which were answered without objection.

. “International Cooperation in Litigation Between the U.S. and Switzerland,” 49 Minn.L. Rev. 1069 (1965).