Application of CHASE MANHATTAN BANK to Modify a Subpoena Duces Tecum Issued by the Clerk of the Southern District Upon the Request of the United States Attorney, Directing The Chase Manhattan Bank to Produce Before the United States Grand Jury of the Southern District Specified Records of The Chase Manhattan Bank.

United States District Court
S. D. New York.
March 30, 1961.

Milbank, Tweed, Hope & Hadley, New York City, for petitioner. Samuel Ross Ballin, New York City, of counsel.

Morton S. Robson, U. S. Atty., for Southern Dist. of New York, New York City, for respondent. Peter H. Morrison, Asst. U. S. Atty., New York City, of counsel.

DAWSON, District Judge.

Heretofore The Chase Manhattan Bank (hereinafter referred to as the Bank) brought a motion to modify a subpoena duces tecum calling for the production of certain books, records and documents relating to named parties. Petitioner sought relief insofar as the subpoena directs production of records maintained by the Bank's Panama branch. On February 9, 1961 the Court denied the application for modification of the subpoena on the ground that the papers presented were not sufficient to warrant the relief sought.

Thereafter the Bank moved for reargument and for a hearing at which it could present testimony and offer proof that compliance with the subpoena duces tecum would violate the laws of Panama. This motion for reargument was granted

and a hearing held on February 24, 1961. The Bank presented the testimony of Senor Carlos Icaza, a practicing member of the bar of the Republic of Panama, as well as documentary evidence with regard to Panamanian law. The testimony of Senor Icaza was that compliance with the subpoena would be a violation of Articles 89 and 93 of Law No. 17 of the Republic of Panama, which is dated January 30, 1961, and which was published in the official Gazette of the Republic of Panama on February 22, 1961. Copies of the provisions of this law, and other laws, were received in evidence.

Article 89 provides in part:

"The merchant furnishing a copy or reproductions of the contents of his books, correspondence and other documents for use in an action abroad, in compliance with an order of an authority not of the Republic of Panama, shall be penalized with a fine not greater than one hundred balboas (B/100.00)."

Article 93 provides:

"The account books, correspondence and other documents which the merchant must keep shall be maintained in his establishment in order that they may be examined by the authority competent therefor. It is forbidden to remove them outside of the country. Violation of this prohibition shall be penalized with a fine not greater than one hundred (B/100.00) balboas."

It was the opinion of Senor Icaza that these laws were applicable to the books and records maintained by the Bank in Panama and that a removal of the documents from Panama or the furnishing of copies thereof for use in an action abroad in compliance with an order of an authority not of the Republic of Panama would be a violation of the laws of Panama which might subject both the Bank and its managing agent to a fine. No evidence to the contrary was introduced by the Government. The law appears to be clear that a Court should not order any party to act in

such a way that it would violate the laws of a friendly foreign power. First Nat. City Bank of New York v. Internal Rev. Serv., 2d Cir., 1959, 271 F.2d 616, 619, certiorari denied, 1960, 361 U.S. 948, 80 S.Ct. 402, 4 L.Ed.2d 381; In re Equitable Plan Co., D.C.S.D.N.Y.1960, 185 F. Supp. 57, 60.

This does not mean that the Government is without relief in a situation such as this. Dr. Icaza testified:

"Q. Can the United States authorities petition the Panama courts for such relief? A. My opinion is that they can, and I see no reason why they should not permit an inspection or to submit such documents to the United States authority.

\*    \*    \*    \*    \*    \*

"The Court: Do you think, Dr. Icaza, that if a subpoena has been issued and if the United States Attorney sends a representative to Panama and makes an application to the Panama Court to look at those records, that that could be granted down there?

"The Witness: I believe it would be granted, yes."

In other words, if the authority ordering the production of the documents is a Panamanian authority there would seem to be no violation of the Panamanian law, and it is the opinion of the witness called by the Bank that the Panama authorities would issue the necessary order upon representations by the United States Government.

If the subpoena is outstanding it would be the duty of the Bank to cooperate with representatives of the United States Government in making the necessary application in Panama for permission to have the documents produced and copied, in accordance with the subpoena. See, Securities and Exchange Comm. v. Minas De Artemisa, S.A., 9 Cir., 1945, 150 F. 2d 215.

In view of the uncontradicted testimony of Senor Icaza and the copies of the law which have been introduced in evidence, it would seem that the next move is up to the Government. It should try, through proper channels, and with the cooperation of the Bank, to secure the necessary authority from the Panama courts to have the documents sought by the Government produced and copied, in response to the subpoena. The Bank, being the subpoenaed party, has the duty of actively cooperating with the Government in an attempt to secure the documents, if they can be obtained through legal processes. In order that such steps may be taken it is necessary that the subpoena be outstanding. For this reason, the Court denies the motion to modify the subpoena. So ordered.