Application of The CHASE MANHATTAN BANK, Petitioner-Appellee,

To Modify a Subpoena Duces Tecum Issued by the Clerk of the Southern District Upon the Request of the United States Attorney, Directing The Chase Manhattan Bank to Produce Before the United States Grand Jury of the Southern District Specified Records of The Chase Manhattan Bank.

United States of America, Respondent-Appellant.

No. 154, Docket 27070.

United States Court of Appeals Second Circuit.

Argued Dec. 12, 1961.

Decided Jan. 11, 1962.

Peter H. Morrison, Asst. U. S. Atty., Southern Dist. of New York, New York City (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, New York City, on the brief; David Klingsberg, Asst. U. S. Atty., Southern Dist. of New York, New York City, of counsel), for respondent-appellant.

Samuel Ross Ballin, New York City (Milbank, Tweed, Hope & Hadley, New York City, on the brief; Andrew J. Connick, New York City, of counsel), for petitioner-appellee.

Before LUMBARD, Chief Judge, and MOORE and HAYS, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

This is an appeal by the Government from an order of the district court, the effect of which was to modify a grand jury subpoena *duces tecum* addressed to and directing appellee, The Chase Manhattan Bank (Chase), to produce, *inter alia*, records in the possession of a branch located in the Republic of Panama. The subpoena was served on Chase, a New York corporation, in New York, its principal place of business, on January 17, 1961. It required Chase to appear before the United States Grand Jury for the

Southern District of New York on January 27, 1961, and produce certain banking records "wherever held" relating to the accounts of four individuals and one corporation.

On January 19, 1961, Chase, by its attorneys, advised the United States Attorney that on the return day of the subpoena, Chase would produce all relevant records in Chase's possession in New York, but that any relevant records in the possession of its Panamanian branches would not be produced unless Chase was assured by Panamanian counsel that production of such records would not violate Panamanian law. On the same day, Chase requested the Panamanian branch to obtain a legal opinion with respect to the production of pertinent records as soon as possible.

On January 27, 1961, counsel for Chase produced the New York records, but advised the Grand Jury that the legal opinion with respect to production of Panamanian records had not yet been received. An adjournment was requested, and the Grand Jury instructed Chase to produce the Panamanian records on January 30, 1961. Chase then telephoned the Panamanian branch and learned that it had just received a written legal opinion to the effect that production in New York of records in the possession of the branch, without the consent of local authorities, would violate Panamanian law. On January 30, 1961, Chase by order to show cause why the subpoena should not be modified as to the Panamanian records, commenced the proceeding now before us on appeal. On the same day, the President of Panama signed Law No. 17, enacted by the Legislature on the previous day. A copy of this new law was submitted to the court on February 2, 1961, the return day of the order to show cause, and it is upon this law that the district court's opinion rests.

Article 89 of Law No. 17 provides in part:

"The merchant furnishing a copy or reproductions of the contents of his books, correspondence and other documents for use in an action abroad, in compliance with an order of an authority not of the Republic of Panama, shall be penalized with a fine not greater than one hundred balboas (B/100.00)."

Article 93 of Law No. 17 provides:

"The account books, correspondence and other documents which the merchant must keep shall be maintained in his establishment in order that they may be examined by the authority competent therefor. It is forbidden to remove them outside of the country. Violation of this prohibition shall be penalized with a fine not greater than one hundred balboas (B/100.00)."

In its original order on February 9, 1961, the lower court explicitly accepted the principle that a subpoena *duces tecum* should be modified if compliance would necessitate a violation of foreign law. However, it denied the motion to modify the subpoena on the grounds that Chase had not adequately established that Law No. 17 would be interpreted to apply, commenting on the lack of any affidavits from Panamanian sources.

On February 15, 1961, Chase moved by an order to show cause for reargument of the application to modify and for a hearing at which to present the testimony of a Panamanian legal expert. The motion was granted and at a hearing on February 24, 1961, Chase produced Senor Carlos Icaza, its Panamanian counsel. He testified that in his opinion, Chase could not respond to the subpoena without subjecting itself to penalties under Panamanian law, and that American authorities could gain access to Panamanian records of American firms only by making application through the Panamanian courts. He also stated that Law No. 17 is the only Panamanian law containing any sanctions with respect to production of records in response to foreign process, and that a violation of the Panamanian law would be equivalent to a misdemeanor under our criminal law. The Government offered no evidence.

Following the rehearing, the district court ruled that Chase had sufficiently shown that production of these records would violate Panamanian law and held that under these circumstances "the next move is up to the Government." The subpoena was left outstanding to insure that Chase complied with its "duty of actively cooperating with the Government" if the Government asked the Panamanian authorities to authorize the Panama branch to produce the documents.

The result reached by the court below is in accord with our previous decision in First National City Bank v. Internal Revenue Service, 2 Cir., 1959, 271 F.2d 616, cert. denied, 361 U.S. 948, 80 S.Ct. 402, 4 L.Ed.2d 381 (1960). There we reinstated a subpoena *duces tecum* on the ground that there was no showing that the law of Panama would be violated by compliance. We stated (271 F.2d p. 619) that if in fact production of branch records located in Panama "would require action by personnel in Panama in violation of the constitution and laws of Panama * * * production * * * should not be ordered" by the courts of this country.

In the instant case, the Government argues that compliance will not violate Panamanian law, since the subpoena is not directed to personnel in Panama but only to the head office in New York. Upon the assumption that "authority" as used in Article 89 means government official (Senor Icaza so testified), the Government concludes that one not a government official (such as a bank official) could, consistently with Panamanian law, order the production of specified records and that the Panamanian branch could legally respond to a request by the Chase head office in New York. However, this would be nothing more than an attempt to circumvent the Panamanian law. Such a maneuver scarcely reflects the kind of respect which we should accord to the laws of a friendly foreign sovereign state. Just as we would expect and require branches of foreign banks to abide by our laws applicable to the conduct of their business in this country, so should we honor their laws affecting our bank branches which are permitted to do business in foreign countries.

The Government also argues that First National City Bank stands for the proposition that the foreign law prohibiting production must provide criminal sanctions to justify the court in modifying the subpoena. But we need not now decide whether the sanctions must always be criminal. The testimony before the district court was to the effect that violation of the Panama statute would be "equivalent to a misdemeanor" under our criminal law.

Finally, the Government contends that before the district court could modify the subpoena, Chase had to show a good faith effort to comply. However, Chase will still be required to demonstrate its good faith, since the court left the subpoena outstanding. This will insure Chase's cooperation with the Government when and if the Government seeks to obtain the records by application to the Panamanian authorities. On the facts of this case, there is nothing unreasonable about modifying the subpoena so as to leave the next move up to the Government.

The Government, as well as other litigants, has a real interest in civil and criminal cases · in obtaining evidence wherever located. However, we also have an obligation to respect the laws of other sovereign states even though they may differ in economic and legal philosophy from our own. As we recently said in modifying subpoenas *duces tecum* in another case, "upon fundamental principles of international comity, our courts dedicated to the enforcement of our laws should not take such action as may cause a violation of the laws of a friendly neighbor or, at the least, an unnecessary circumvention of its procedures." Ings v. Ferguson, 2 Cir., 1960, 282 F.2d 149.

Affirmed.